UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GREGORY HARDY,

          Plaintiff,                     Case No. 1:18-cv-839

v.                                                 Honorable Janet T. Neff

INGHAM COUNTY JAIL et al.,

          Defendants.
_____/

## OPINION

        This is a civil rights action under 42 U.S.C. § 1983 and Title II of the ADA, 42 U.S.C. § 12132, by a former jail detainee proceeding *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any action brought by an individual proceeding *in forma pauperis* if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Ingham County Jail (and Ingham County), John Doe, and Jane Doe. The Court will serve the complaint, in part, against Defendants Hagerman, Dell, and Chappell.

**Discussion**

I. Factual allegations

Plaintiff Gregory Hardy was detained in the Ingham County Jail (ICJ) from April 4, 2018 to April 11, 2018. He sues the jail itself as well as the following employees of Ingham County working at the jail: Deputy C. Hagerman, Deputy J. Dell, Deputy (unknown) Chappell, and two defendants identified as "John Doe" and "Jane Doe." (Compl., ECF No. 1, PageID.1.)

Plaintiff alleges that he was arrested on April 4, 2018 and detained at ICJ. On the morning of April 11, Plaintiff appeared in court, and the court ordered that Plaintiff be released on bond. Plaintiff returned to the jail at about 3:00 p.m., following his court hearing. Plaintiff subsequently asked Defendant Chappell on several occasions when he would be released. Chappell told him that Plaintiff could not be released because there was no one available to process his release; "everyone," including all the shift commanders, were in a meeting. (*Id.*, PageID.4.)

Plaintiff was finally released at 7:30 p.m. Plaintiff claims that when he arrived at "receiving," he learned that he was being released by Defendant Hagerman, who intentionally "sat" on the release until it was dark outside. Plaintiff alleges that he did not have money for transportation because Hagerman had taken Plaintiff's money, contrary to ICJ policy or custom. Plaintiff also alleges that Hagerman was "rude and argumentative." (*Id.*) Plaintiff threatened to report Hagerman to the "Jail Administrator," but Defendants Hagerman and Dell allegedly responded, "whatever." (*Id.*)

Plaintiff alleges that he was taking several medications at the time, including amlodipine and meloxicam for pain and chronic arthralgia, and sertraline, famotidine, and seroquel for bipolar disorder, schizophrenia, depression, and brain damage. Plaintiff allegedly asked Hagerman to provide the "psychotropic" medication that Plaintiff brought with him to jail.

Plaintiff had not taken his evening dose of seroquel. Hagerman apparently refused, telling Plaintiff that he was "too busy" to call for the medication. (*Id.*, PageID.5.) Plaintiff insisted that he would not leave without the medication, but Hagerman threatened to lock Plaintiff up if he did not leave, and stated, "[T]his is why I held your release[.]" (*Id.*) Defendant Dell allegedly offered to call for the medication, but after making eye contact with Defendant Hagerman, Dell told Plaintiff that they were too busy.

That evening, Plaintiff "suffered severely" because he was deprived of his evening dose of seroquel. (*Id.*) He experienced symptoms of immediate withdrawal, including paranoia, nausea, vomiting, and delusions.

Plaintiff contends that Defendants were deliberately indifferent to his medical needs by refusing to release him with his medication. He also contends that they acted as they did in retaliation for the fact that he filed two federal lawsuits against Ingham County officials, one of which named Hagerman as a defendant. *See Hardy v. Ingham County Jail et al.*, No. 1:13-cv-1133 (W.D. Mich.) (naming Hagerman); *see also Hardy v. Ingham County Jail et al.*, No. 1:17-cv-20 (W.D. Mich.). In addition, he contends that Defendants' decision to withhold his medication deprived him of his right to equal protection under the Fourteenth Amendment, and violated the ADA.

As relief, Plaintiff seeks damages of "$750.000.00."

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A. Ingham County Jail

Plaintiff sues the Ingham County Jail. The jail is a building, not an entity capable of being sued in its own right. However, construing Plaintiff's pro se complaint with all required liberality, the Court assumes that Plaintiff intended to sue Ingham County. Accordingly, the Court will determine whether Plaintiff states a claim against Ingham County.

### B. Conclusory Allegations

Plaintiff names unidentified "John Doe" and "Jane Doe" defendants in the caption of his complaint, but these defendants are not mentioned in his allegations. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550

4

U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff makes no allegations about the "John Doe" and "Jane Doe" defendants, they will be dismissed for failure to state a claim.

### C. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

1. Ingham County

Ingham County may not be held vicariously liable under § 1983 for the actions of its employees. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005).

Plaintiff's § 1983 claim against Ingham County fails because he does not allege a custom or policy as the source of his injury.

2. Fourth Amendment

On April 11, 2018, Plaintiff returned to jail around 3:00 p.m. after the court ordered that he be released on bond. Plaintiff asked Defendant Chappell when he would be released, and Chappell apparently told him that there was no one available to process his release because the jail's staff, including shift commanders, were in a meeting. Later, Defendant Hagerman allegedly told Plaintiff that he "held" Plaintiff's release. Plaintiff was not released until 7:30 p.m. that evening, more than four hours after his return to jail.

The Fourth Amendment requires jails "to process and release individuals who post bond within a reasonable time." *Lopez-Lopez v. County of Allegan*, No. 1:17-cv-786, 2018 WL 3407695 (W.D. Mich. July 13, 2018) (citing *Portis v. City of Chicago*, 613 F.3d 702, 704

(7th Cir. 2010), and *Chortek v. City of Milwaukee*, 356 F.3d 740, 747 (7th Cir. 2004)). In *Chortek*, the Court of Appeals for the Seventh Circuit concluded that delays of between three and fourteen and a half hours were reasonable under the circumstances, where there was evidence of a backlog and there was no evidence of improper purpose for the delay. *Chortek*, 356 F.3d at 747. However, the Court noted that "the reasonableness of a length of detention typically 'is a question best left open for juries to answer based on the facts presented in each case.'" *Id.* (quoting *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988)). In a more recent decision discussing delays between approval of bond and release, the same court clarified that there is no "numerical definition of a reasonable time," and that "detentions as brief as four hours could be excessive and must be justified." *Portis*, 613 F.3d at 705. Construing the complaint generously, Plaintiff alleges that Defendants intentionally delayed his release, causing him to be detained for over four hours after the court ordered his release. These allegations are sufficient to state a Fourth Amendment claim against Defendants Chappell and Hagerman.

3. Fourteenth Amendment (deliberate indifference)

Plaintiff alleges that, when he was being released, Defendants Hagerman and Dell denied him access to the medications that he brought with him when he was admitted at the jail. These allegations implicate his rights under the Fourteenth Amendment. Pre-trial detainees are protected by the Due Process Clause of the Fourteenth Amendment, but those rights are analogous to those of prisoners under the Eighth Amendment. *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985); *accord Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016) (making clear that pretrial detainees are "entitled to the same Eighth Amendment rights as other inmates") (quoting *Thompson v. Cty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994)).

7

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Plaintiff's allegations are sufficient to state a claim against Defendants Hagerman and Dell.

4. Fourteenth Amendment (equal protection)

Plaintiff claims that he was denied equal protection. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that he is a member of a suspect class. Plaintiff's claim therefore is subject to rational-basis review. *See Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006).

> In typical equal protection cases, plaintiffs "generally allege that they have been arbitrarily classified as members of an 'identifiable group.'" *Engquist* [*v. Oregon Dep's of Agric.*, 553 U.S. 591, 601 (2008)] (quoting *Personal Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). . . . When the identifiable group has not been recognized as a suspect or quasi-suspect class, courts examine the classification under rational basis review. *See, e.g., Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976) (discrimination based on age).
>
> In contrast, in "class-of-one" claims, "the plaintiff [does] not allege membership in a class or group" but rather simply "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class."

8

*Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012).

Plaintiff fails to state an equal protection claim because he does not allege that he was treated differently from others who are similarly situated.

5. First Amendment

Plaintiff contends that Defendants retaliated against him because of lawsuits that he filed in 2013 and 2017. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th

9

Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him because he filed his lawsuits. Indeed, according to the public record of Case No. 1:13-cv-1133, Plaintiff agreed to dismiss that case with prejudice in March 2016, over two years before the events giving rise to the instant case. That case is too far removed from the circumstances at issue in the complaint to support a plausible retaliation claim. Plaintiff's other case, Case No. 1:17-cv-20, was resolved by summary judgment in August 2018 and is pending on appeal, but Plaintiff does not allege any facts from which to make a reasonable inference that Defendants retaliated against him because of that action. Accordingly, the Court will dismiss Plaintiff's First Amendment claim because his speculative allegation of retaliation fails to state a plausible claim.

### D. ADA

Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he] was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of [his] disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (footnote omitted).

Plaintiff's ADA claim fails because he does not allege that he was excluded from participation in, denied the benefits of, or subjected to discrimination because of his asserted disabilities. In fact, he alleges that Defendants "penalized" him because he filed civil rights litigation. (*See* Compl., PageID.7.) Consequently, the Court will dismiss the ADA claim.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that fails to state a claim against Defendants Ingham County Jail, Ingham County, John Doe, and Jane Doe. Consequently, they will be dismissed under 28 U.S.C. § 1915(e)(2). Plaintiff also fails to state a claim under § 1983 that Defendants retaliated against him in violation of the First Amendment, or denied him equal protection under the Fourteenth Amendment. Likewise, Plaintiff fails to state a claim under Title II of the ADA. The Court will serve the remaining claims in the complaint against Defendants Hagerman, Dell, and Chappell.

An order consistent with this opinion will be entered.


Dated:   September 12, 2018                    /s/ Janet T. Neff
                                               Janet T. Neff
                                               United States District Judge